Estate of Elva W. Wilcox, Deceased, Thomas B. Clair and Veronica E. Mattes, Executors v. Commissioner.
Estate of Wilcox v. Commissioner
Docket No. 58526.
United States Tax Court
T.C. Memo 1957-91; 1957 Tax Ct. Memo LEXIS 159; 16 T.C.M. (CCH) 381; T.C.M. (RIA) 57091; May 31, 1957
*159 Held, the proof not establishing that the trust corpus would not be invaded to pay "expenses for medical, nurses' or doctors' fees," the respondent did not err in holding that a deduction of the value of the trust remainder which was left to a charitable purpose should be disallowed in computing the estate tax. Thomas B. Clair, Esq., 32-05 Bell Howard Boulevard, Bayside, N. Y., for the petitioner. Victor H. Frank, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in estate tax of the decedent in the amount of $16,005.91, in part due to the disallowance of the value of a remainder interest of a testamentary trust, which remainder interest was given to a charitable use. All of the issues raised by petitioner in the case were disposed of by agreement of the parties excepting one. The contested issue involves the effect of a possible invasion of the trust corpus to pay "any expenses for medical, nurses or doctors fees." The respondent contends that such contingency rendered the remainder interest incapable of valuation. Most of the facts were stipulated. Findings of Fact Petitioner is the *160 Estate of Elva W. Wilcox, Thomas B. Clair and Veronica E. Mattes, Executors. The estate tax return was filed May 19, 1952, with the then collector of internal revenue for the first district of New York. The decedent, Elva W. Wilcox, died on the 18th day of February 1951. The last will and testament of Elva W. Wilcox, deceased, was duly admitted to probate by the Surrogate's Court of Queens County, New York. On March 7, 1951, letters testamentary for the estate were granted by the Surrogate's Court to Thomas B. Clair and Veronica E. Mattes who thereupon acted and still are acting as executors of the estate. Articles Tenth and Eleventh of decedent's will state as follows: "Tenth: All the rest, residue and remainder of my property, real, personal and mixed, of whatsoever nature and wheresoever situated, of which I may die seized and possessed or in or to which I may have any interest or over which I may have any power of appointment and including any lapsed legacies, I give, devise and bequeath to my Trustees, hereinafter named, IN TRUST NEVERTHELESS, for the following uses and purposes, "(a) To hold said property as a separate trust during the lifetime of my sister, LAURA WILCOX *161 PRESTON, and my friend, MARIAN K. BRADFORD, and during the lifetime of the survivor of them. "(b) To invest and reinvest said trust fund, to collect the income therefrom and to pay over the net income therefrom in quarter annual installments to my mother, CARRIE M. WILCOX, during her life. If in any year the net income from said trust fund shall be less than $5,000. then and in such case, I direct my Trustees, hereinafter named, to pay out of the principal of said trust fund such sum or sums as may be necessary to give my mother, said CARRIE M. WILCOX, a total of $5.000. each year. "(c) Upon the death of my said mother, CARRIE M. WILCOX, or upon my death, if she shall have predeceased me, my said Trustees, hereinafter named, shall invest and reinvest said trust fund, collect and receive the income therefrom and pay over the net income therefrom in quarter-annual installments to my sister, LAURA WILCOX PRESTON, and my friend, MARIAN K. BRADFORD, share alike or all to the survivor if only one be living. If in any year the net income from said trust fund shall be less than $5,000. then and in such case, I direct my Trustees, hereinafter named, to pay out of the principal of said trust *162 fund such sum or sums as may be necessary to give my said sister, LAURA WILCOX PRESTON, and my said friend, MARIAN K. BRADFORD, or the survivor of them, a total of $5,000. each year. "(d) Upon the death of the last survivor of said LAURA WILCOX PRESTON, and said MARIAN K. BRADFORD, my said Trustees, hereinafter named, shall assign, transfer and pay over said trust fund, as it shall then exist, to the Board of Directors of Advertising Women of New York, Inc. to be known as the E. W. Wilcox Fund and to be disbursed for charitable or educational purposes in the interests of women. "Eleventh: Anything herein contained to the contrary notwithstanding, my Trustees may, at any time and from time to time, transfer, deliver, assign and pay over to my mother during her lifetime, or to any beneficiary for whom a share of my residuary estate shall be held in trust, so much or all of the principal of said trust fund in the case of my mother, or of the share thereof held in trust for any other beneficiary, as my Trustees may, in their uncontrolled discretion, deem advisable, to meet any expenses for medical, nurses' or doctors' fees, which payments shall be absolute and free of all trusts, and *163 the judgment of my Trustees of the amount of such payments and of the advisability thereof shall be final and conclusive upon all persons interested or who may become interested in my estate, and upon making any such payments my Trustees shall be fully released and discharged from all further liability or accountability therefor." (Italics supplied.) The Board of Directors of Advertising Women of New York, Inc., the remainderman under the trust created by Article Tenth and Article Eleventh of the will, formally accepted the trust. The amount of the trust of the residuary estate of the decedent amounted, as of the date of death of the decedent, to $90,742.83. Carrie M. Wilcox was born July 26, 1866. Laura Wilcox Preston was born April 27, 1886. Marian K. Bradford was born May 30, 1889. The amount of expenses for medical, nurses' or doctors' fees paid or incurred by the estate for Carrie M. Wilcox from the date of death of the decedent, February 18, 1951, to February 18, 1957 (6 years), is $1,399.33. Carrie M. Wilcox, all of whose property came from decedent, had other income sufficient to meet her living expenses and in addition to the provision paying her $5,000 from the trust, *164 she had the use of decedent's house, two bank accounts of $5,000 each and a life annuity of $250 a year. Mrs. Wilcox (89 years of age) had had a shoulder operation in 1953 for skin cancer and suffers from the usual infirmities consequent on advanced years. She had a little trouble with her ears and some arthritis and bronchitis. Laura W. Preston had income sufficient to meet her living expenses. Her medical expenses in 1956 included $22 for visits to doctors and $75 for visits to dentists (if dental expenses be considered as medical expenses). In 1955 she had an eye operation for removal of a cataract due to a traumatism, which cost her about $600. At one time earlier in her life, she had a tumor which required medical attention; she had a touch of arthritis; and has, at the present time, a slight case of diabetes which occasionally requires attention. She owns a beach cottage worth $2,500 and pays one-half of the cost of maintaining her home. Her income from annuities amounts to $1,868.04 per year, which annuities will last at least 10 years. She also had income from a house, bonds and pensions in excess of $4,000 a year. As a possible beneficiary under the trust, she might receive *165 annually $2,500 additional income or $5,000 in case she was the sole survivor. She maintains Blue Cross membership. Marian K. Bradford had bank saving accounts amounting to $33,000 and a checking account. She had stocks and bonds amounting to approximately $12,000, a United States Government pension of $3,300 a year and jewelry of the value of $17,800. She had assured annual income of more than $5,000, which was sufficient to meet her living expenses. As a beneficiary of the testamentary trust, she might receive $2,500 additional income or $5,000 if she became the sole beneficiary thereof. Miss Bradford is a Christian Scientist and employed the services of a practitioner for which she paid approximately $400 a year. She also had dental expenses of approximately $200. She had membership in the Blue Cross medical insurance. She was in good health except for a weakness in her legs which affected her walking. She has never had an operation. The health of Carrie M. Wilcox, Laura W. Preston and Marian K. Bradford was generally good considering their age and none of them had any serious infirmity other than such as is normal and usual in persons of advanced years. Opinion VAN FOSSAN, *166 Judge: In the estate tax return the executors claimed a deduction of $33,324.30 for charitable purposes. They stated that this figure was subject to recomputation and adjustment. The stated figure was the result of valuing the interests of the three beneficiaries based on life expectancy and deducting the result from the corpus value then claimed to be $119,495.20. Respondent disallowed this deduction "in absence of legal evidence that the bequest is for charitable or educational purposes within the meaning of the Code." In the petition this action was put in issue, petitioner claiming that the value of the annuities provided for was $53,380 and the value of the remainder interest was $66,115.20. At the hearing the parties submitted a stipulation of facts which fixed the value of the residuary estate of the decedent, as of the date of death, at $90,742.83. The case was tried and submitted on the limited issue whether the discretion given to the trustees of the trust to invade the corpus for funds with which to pay, on behalf of the beneficiaries, any expenses incurred for "medical, nurses' or doctors' fees," rendered the trust remainder uncertain in amount so that the residuary estate *167 given to a charitable use was incapable of valuation. The case may not be so easily disposed of as the above-stated issue would suggest. We know nothing of the character of the remainderman, whether charitable or not. However, since the parties place no emphasis on the absence of such facts, we will assume that they are satisfied in this respect and pass to the matter of the invasion of the corpus. As to the issue stated in the petition, we have a stipulated amount of corpus ($90,742.83), but we are not informed of the amount of income earned annually on such corpus or how the corpus is invested. Invested at ordinary trust income producing rates, the sum of $90,000 would fall much short of producing income of $5,000 per year. Apparently it may have been necessary and will continue to be necessary to invade the corpus each year to provide for the annuity of $5,000 payable annually to Carrie M. Wilcox and the other beneficiaries in turn. The invasion of the corpus was not only possible, it was probable regardless of any invasion for "medical, nurses' or doctors' fees." Further, we know of no provision of the trust instrument that the beneficiaries were obligated to exhaust their *168 own income before calling on the trust to pay medical expenses. Passing to the probabilities of the future illness or health of the beneficiaries, we meet further difficulty. When a person reaches the advanced years attained by the three beneficiaries, the probability of illness is at least as reasonable as the probability of good health. Medical expenses pile up with surprising speed. The experience tables are of some help but they are not infallible. The burden assumed by petitioner in this case was the demonstration of the improbability of invading the corpus of the trust. Reviewing all the facts and inferences, the possibilities and the probabilities, we are unable to hold that petitioner has successfully demonstrated that the corpus of the trust will not be invaded each year to pay both part of the annuity and the expenses for "medical, nurses' or doctors' fees." The record does not furnish us with evidence from which we can estimate or find the probable amount of such invasion of the corpus. Accordingly, the respondent is affirmed. Decision will be entered under Rule 50.